## GULF, C. & S. F. RY. CO. v. BLACKMON.
### No. 4208.

Court of Civil Appeals of Texas. Texarkana.
Oct. 8, 1932. •

Rehearing Denied Oct. 27, 1932.

Woolworth & Baker, of Carthage, Young, Stinchcomb & Kenley, of Longview, and Terry, Cavin & Mills, of Galveston, for appellant.

S. P. Jones, Franklin Jones, and Percy Woodard, all of Marshall, and Long & Strong, of Carthage, for appellee.

SELLERS, J.

Oscar Blackmon brought this suit in the district court of Panola county against the Gulf, Colorado & Santa Fé Railway Company to recover damages for personal injuries received while a passenger on one of the company's passenger trains. Negligence is predicated upon the acts of the railway company's employees in placing and permitting an obstruction to be in the aisle of the coach occupied by Blackmon as a passenger, and also in failing to discharge their duty by discovering and removing the obstruction before the injury to Blackmon. The case was submitted to a jury on special issues, and the jury found the employees of the railway company guilty of negligence in permitting the aisle of the coach on which Blackmon was a passenger to become obstructed, which obstruction was the proximate cause of Blackmon's injury; and also convicted the employees of the railway company of negligence, in that the obstruction had been in the aisle long enough for the railway company, through its employees in the exercise of a high degree of care, to have discovered and removed the obstruction before the accident and injury to Blackmon, and that such negligence was the proximate cause of the injury to Blackmon. Other issues were submitted to the jury not necessary here to be noticed. The damages assessed were $7,000, and judgment for Blackmon accordingly entered, from which judgment the railway company has duly prosecuted this appeal.

The facts necessary to the disposition to be made of this case may be briefly stated: Oscar Blackmon, the appellee, got on appellant's train at Carthage, Tex., to go to Beckville, Tex., a distance of about ten miles. As the appellee, with other passengers, was proceeding to leave the train at Beckville, he stumbled and fell over a suitcase which was extending out into the aisle of the coach in which he was riding, and he was thereby seriously injured. Blackmon testified he knew another passenger who got on the train at Carthage by name of Dick Brassier, that the suitcase over which he fell was sticking out from behind the seat in which Dick Brassier was riding, and that after he fell Dick Brassier picked up the suitcase and straightened it out, and that he saw him do it. Blackmon further testified that he never did see the suitcase until after he fell over it. The only other witness who testified to seeing the suitcase in the aisle was Ras Jones, who also got on the train at Carthage and got off at Beckville. He testified with reference to the grip as follows: "When I got off the coach, while walking down the aisle, I saw a suitcase there in the aisle. It was near the front of the car, and was sticking out, I judge, about half. I had not seen it before I started to get off the car. * * * I first saw the grip extending into the aisle when I got up. I never saw it before that. The train was stopped."

Dick Brassier, the one whom appellee claimed picked up the suitcase after appellee fell, testified as follows: "No part of the suitcase was protruding into the aisle. The part of the coach I was occupying that night was three or four seats from the front on the left hand side. I was on the left side, facing north. I did not notice Mr. Blackmon when he got off the train that night. I do not think anyone stumbled over any suitcase while getting off the train there that night at Beckville. They could not stumble over it—it was between the seats. I do not think anyone fell leaving the car, immediately at my right—if they did, I would have seen it. After the passengers disembarked at Beckville, and before they all left the car, I did not pick up the suitcase and close it and put it back where it was. I did not touch the suitcase there at Beckville while the passengers were leaving. The next

time I saw my suitcase, or had hold of it after I put it there, was at Longview, when I got off the train. With reference to where I placed it, it was right there, I did not touch my suitcase between Carthage and Longview."

The conductor, porter, and news agent on the train all testified that immediately before the train stopped for passengers to alight at Beckville they were through the coach on which the appellee was riding between Carthage and Beckville, and that they noticed for obstructions in the aisle, and that there were none in the aisle. Several passengers, some of whom got off the train at Beckville, testified that they did not see any obstruction or suitcase in the aisle of this coach before or at the time they were alighting from the train. The evidence shows that some five or six passengers in that coach got off the train at Beckville.

The appellant assigns as error the failure of the trial court to instruct the jury to return a verdict in its favor, for reason that appellee had failed to offer evidence to establish any actionable negligence proximately causing the injury to appellee predicated upon either of the acts charged. We are unable to escape the conclusion that this assignment must be sustained.

■ The rule seems well established in Texas that negligence in this character of cases is established by evidence of one or two things, either that an employee of the company placed the suitcase in the aisle, or that the suitcase had been in the aisle long enough to justify the inference that a failure to discover and remove the same was due to a want of proper care. Wichita Valley Ry. Co. v. Helms (Tex. Civ. App.) 261 S. W. 225, 227, and cases cited.

■ There is no contention in this case that an employee of appellant placed the suitcase in the aisle. The appellee's case, then, must depend upon the evidence being sufficient to show that the suitcase had been in the aisle long enough to enable the train employees to see or know it and to charge the employees of appellant with negligence in failing to remove the same before the time of the injury of the appellant at Beckville. All the evidence with reference to the suitcase's ever being in the aisle, as before stated, is that of appellant and the witness Ras Jones, both of whom testified they never saw the suitcase until the train stopped at Beckville for the passengers to alight and until they got up to get off the train. Surely, then, it should not be held that the employees of appellant were negligent in not discovering the suitcase in the aisle between the time it was first seen by the witness Jones and the injury to appellee, which could not possibly, under the evidence, have been longer than a minute, or

two, at the outside. The remaining question, then, is: Was the evidence sufficient, from which the jury was authorized to find as a fact, that the suitcase had been in the aisle before the injury to the appellee a sufficient length of time to charge the employees of appellant with notice of its being in the aisle, and, as a consequence, with negligence in not removing it? We think not. The only possible way for the jury to arrive at such fact was by a presumption based solely on the fact that the suitcase was placed in the aisle at Beckville when the train stopped, and this in the face of the undisputed evidence of the conductor, porter, and news agent that they were through the car after the train left Carthage and by the time it reached Beckville, noticing for obstructions in the aisle, and that the suitcase was not in the aisle; and the evidence of Brassier that he placed the suitcase behind his seat out of the aisle when he got on the train at Carthage. We do not believe that there is any actionable negligence established by the evidence to support appellee's recovery in this case. Livingston v. Atlantic Coast Line Ry. (C. C. A.) 28 F.(2d) 563.

The judgment is reversed and here rendered for appellant.