# NOVEMBER, 1909.

MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
J. W. ROMANS.

No. 1969.   Decided November 3, 1909.

**Master and Servant—Safe Place to Work—Proof of Negligence.**

A servant, employed to load ballast, throwing it with a shovel from a bank of the ballast onto a flat car on a track alongside of same, built for the purpose and moved nearer from time to time as the material nearest the track was loaded, was injured by stepping into a hole in the ground filled with loose dust fallen in the process of loading. Held, that, in the absence of proof as to how the hole was caused, how long it had existed, or of knowledge of its existence by any servant for whose negligence with respect thereto the master would be liable, there is no evidence of negligence to support a recovery against the master. No inference of such knowledge or negligence arose from the mere existence of such hole under the circumstances.

Error to the Court of Civil Appeals from the Fifth District in an appeal from Hunt County.

Romans sued the railway company and recovered judgment. It was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Coke, Miller & Coke,* and *J. D. Craddock,* for plaintiff in error.—The peremptory instruction for the defendant should have been given and the court erred in refusing it, because the evidence wholly failed to show any negligence of the appellant as the proximate cause of the injury to the appellee and failed to show that the appellant owed to the appellee the duty to have the place where he was at work reasonably safe, and showed that such hole was made by one or more of appellee's fellow servants in the process of loading ballast and that such injury was caused by the negligence of appellee's fellow servant or servants. Armour v. Hahn, 111 U. S., 318; Armour & Co. v. Dumas, 43 Texas Civ. App., 36; Allen v. Galveston, H. & S. A. Ry. Co., 14 Texas Civ. App., 344; Citrone v. O'Rourke Eng. Const., 188 N. Y., 339; Village of Montgomery v. Robertson, 229 Ill., 466; Am. Bridge Co. v. Seeds, 144 Fed., 605, 11 L. R. A. (N. S.), 1041; 2 Labatt, Master & Servant, secs. 587-588; Thompson on Negligence, sec. 3876.

The evidence wholly failed to show that if the hole existed the appellant had been negligent in respect thereto or had any knowledge thereof or had had opportunity to know of the same; nor was there any evidence that the nature of the hole was such as to imply such negligence on the part of the appellant or that the hole had existed for such a length of time that the appellant could be presumed to be negligent in failing to discover and remedy the same.

Missouri, K. & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; 1 Labatt, Master & Servant, sec. 126.

Under the evidence the conditions at the place where the work of shoveling ballast was being done were constantly changing in the progress of the work of loading the ballast, and under such conditions the rule requiring the appellant as to employees to use ordinary care to have and maintain a reasonably safe place for the appellee to perform the work had no application. Armour v Hahn, 111 U. S., 318; Armour & Co. v. Dumas, 43 Texas Civ. App., 36; Allen v. Galveston, H. & S. A. Ry. Co., 14 Texas Civ. App., 344; Citrone v. O'Rourke Eng. Const., 188 N. Y., 339; Village of Montgomery v. Robertson, 229 Ill., 466; 2 Labatt, Master & Servant, secs. 588, 589; Thompson on Negligence, sec. 3876.

The charge, in submitting to the jury whether the appellant had caused the hole to be made and had permitted it to become filled with loose gumbo and in authorizing a verdict against the appellant if when so made or formed and filled it was dangerous as a place to work, was erroneous and wholly without evidence to support it, because the evidence failed to show definitely by whom and when the hole was made, leaving the question as to when and how it was made the subject of conjecture, speculation and inference, and the evidence further failed to show with any reasonable certainty or probability that the existence of the hole was due to any negligence either of commission or omission of the appellant; and failed to show that the appellant knew it was there, or that it had existed for such a time that the appellant ought to have known of it. Same authorities, also: Missouri, K & T. Ry. Co. v. Thompson, 11 Texas Civ. App., 658; Am. Bridge Co. v. Seeds, 144 Fed., 605, 11 L. R. A. (N. S.), 1041.

*Thompson & Mead, B. Q. Evans* and *C. L. Elder,* for defendant in error.—It was the duty of appellant to use ordinary care to provide appellee a reasonably safe place to work, and the fact as to whether such care had been exercised was, under the charge of the court, properly left to the determination of the jury from the testimony given in the trial. If the appellant negligently permitted a hole to be made or to exist in the surface where appellee had to stand and walk in the prosecution of his work, and by reason thereof the latter was injured, appellant would be liable even though such hole may have been made by a fellow servant, or an independent contractor. Texas & N. O. Ry. Co. v. Bingle, 71 Texas, 288; Galveston, H. & S. A. Ry. Co. v. Croskell, 6 Texas Civ. App., 160; Wall v. Railway Co., 2 Posey U. C., 434; Gulf, C. & S. F. Ry. Co. v. Redeker, 67 Texas, 187; Houston & T. C. Ry. Co. v. Dunham, 49 Texas, 189; Texas M. Ry. Co. v. Whitmore, 58 Texas, 289; Houston & T. C. Ry. Co. v. O'Hare, 64 Texas, 602; International & G. N. Ry. Co. v. Kernan, 78 Texas, 297; Missouri, K. & T. Ry. Co v. Wood, 35 S. W., 879; Texas & P. Ry. Co. v. Hohn, 1 Texas Civ. App., 36; Howe v. St. Clair, 8 Texas Civ. App., 101; International & G. N. Ry. Co. v. Kindred, 57 Texas, 491; Missouri, K. & T. Ry. Co. v. Quarles, 22 Texas Civ. App., 83; 1 Labatt, M. &

S., secs. 22a and 29; id., vol. 2, sec. 551; Hurdler v. Buck Stove & Range Co., 37 S. W., 115.

The charge complained of embodies a well established principle of law. It was the duty of appellant to exercise ordinary care to furnish appellee a reasonably safe place to work, and to keep such place in a reasonably safe condition, and this rule exists regardless of the acts of intervening agencies which may have caused or permitted the unsafe condition. Appellant was liable, if it failed to exercise ordinary care, however the unsafe condition may have been brought about, whether by the direct act of the master, the act of fellow servants, of independent contractors, of strangers, by the forces of nature—or by any or all of these working in conjunction. Same authorities, and also: Houston & T. C. Ry. Co. v. Marcellus, 59 Texas, 334; Texas & P. Ry. Co. v. Ofiel, 78 Texas, 486; Texas & P. Ry. Co. v. Kirk, 62 Texas, 227; Galveston, H. & S. A. Ry. Co. v. Farmer, 73 Texas, 85; Galveston, H. & S. A. Ry. Co. v. Smith, 76 Texas, 611; 1 Labatt, M. & S., secs. 17, 100, 154-165; Illinois Steel Co. v. Schymanowski, 162 Ill., 447; Neveu v. Sears, 155 Mass., 303; Kiras v. Nichols Chem. Co., 69 N. Y., 44.

The question of the appellee's injury, its cause and extent, under the pleadings and the evidence, was submitted by the court in his charge for the determination of the jury. The jury found against the theory of appellant and this finding is amply supported by the testimony of the case. Same authorities, and in addition thereto the following: Simms v. Price, Dallam, 554; Long v. Steiger, 8 Texas, 462; Elliot v. Whitaker, 30 Texas, 418; Missouri, K. & T. Ry. Co. v. St. Clair, 21 Texas, Civ. App., 345; Taylor v. Flint, 24 Texas Civ. App., 394; McGown v. Railway Co., 85 Texas, 289; Gulf, C. & S. F. Ry. Co. v. Kizziah, 4 Texas Civ. App., 356.

It is hardly necessary to remind the court of the well established principle that "where there is any evidence tending to support an issue, or where the evidence is conflicting or fairly susceptible of different interpretations, or the inferences to be drawn from the evidence are doubtful, it is the duty of the trial court to submit the issue to the jury." Galveston, H. & S. A. Ry. Co. v. Quay, 3 Texas Ct. Rep., 914; Choate v. Railway Co., 90 Texas, 82; Washington v. Railway Co., 90 Texas, 314; McGowan v. Railway Co., 85 Texas, 292; Patton v. Rucker, 29 Texas, 406; Johnson v. Draught, 22 S. W., 290; Dittman v. Weiss, 31 S. W., 67; Heatherly v. Little, 21 Texas Civ. App., 664; Railway Co. v. Stout, 17 Wall., 657; 2 Thomp. Neg., 1235; Galveston, H. & S. A. Ry. Co. v. Puente, 5 Texas Ct. Rep., 959.

It is the duty of the master to exercise ordinary care to furnish the servant a safe place to work. The servant has the right to rely upon the assumption that the master has done his duty. He is not required to use ordinary care to see whether this has been done or not. He does not assume the risk arising from the failure of the master to do his duty, unless he knows of the failure and the attendant risk, or, in the ordinary discharge of his own duties, must necessarily have acquired the knowledge. Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 351; San Antonio & A. P. Ry. Co. v. Brooking,

51 S W., 537; Texas S. V. & N. W. Ry. Co. v. Guy, 23 S. W., 633; Texas & P. Ry. Co. v. McCoy, 17 Texas Civ. App., 494; San Antonio Foundry Co. v. Drish, 38 Texas Civ. App., 214; International & G. N. Ry Co. v. Kindred, 57 Texas, 491; Gulf, C. & S. F. Ry. Co. v. Delaney, 22 Texas Civ. App., 427.

The duties of the defendant in error were entirely separate and distinct from those of preparing and keeping the space where he was required to stand and labor in proper condition; that duty devolving solely on the track crew; and it is not shown that the prosecution of the work of loading gumbo by those engaged in that labor tended in any way to create dangers of the character of that causing the injury complained of; nor does the testimony show that any labor necessary to be performed by any of the employes at said gumbo plant was of such a nature that it would necessitate the digging or making of holes of the character of the one in question. This very fact creates the difficulty in accounting for the origin of the hole, a difficulty unnecessary to be solved, however, in determining the responsibility of plaintiff in error in permitting it to be and remain there. Missouri, K. & T. Ry. Co. v. Quarles, 22 Texas Civ. App., 83; Houston & T. C. Ry. Co. v. Dunham, 49 Texas, 189; Houston & T. C. Ry. Co. v. O'Hare, 64 Texas, 602; Railway Co. v Carter, 112 S. W., 904; Hurdler v. Buck Stove & Range Co., 37 S. W., 115; Wilson v. Railway Co., 99 S. W., 465; 1 Labatt, M. & S., Sec. 29.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The defendant in error recovered the judgment from which this writ of error is prosecuted for damages for a personal injury received by him in the service of the plaintiff in error. The facts upon which his right of recovery depends are thus stated by the Court of Civil Appeals:

"Plaintiff at the time of the injury was in the employ of defendant, loading cars with gumbo at a plant owned and controlled by defendant. At said plant there were three large embankments of burnt gumbo in parallel rows several hundred yards in length probably one hundred feet wide and twelve to fifteen feet high. These embankments were made originally by scooping out a ditch in the ground, piling dirt, old timbers and coal therein, in alternate layers and burning the black soil in this way so as to form a ballast known as burnt gumbo. When the ballast in these embankments was ready to be moved, flat cars were run in on a track built parallel with and near to the edge of one of the embankments and the ballast was thrown upon these cars with scoop shovels by men employed to do that at so much per car. These men so employed in loading the cars worked independently of each other and according to their own methods and practically in their own time, there being, however, a foreman who inspected the cars as to quality and quantity when loaded, accepted them when sufficiently loaded, and gave to the individual loader credit for the car at the agreed price. The loading was begun at the outer edge of the embankment and when a few feet from the side of the embankment had been thus loaded and re-

moved, the track crew would move the track nearer to the embank-
ment from time to time and the loading would then proceed until
the whole of the embankment had been loaded. . . . Plaintiff
had partly loaded a car when he stopped work for the night, and
when he returned next morning the car had been moved some hun-
dred feet or more from the position it occupied the evening before.
In attempting to throw a shovel of gumbo on the car he made a mis-
step and his foot went into a hole which caused him to fall across
a ridge of gumbo that had formed along the edge of the cross-ties
by some of the gumbo falling as it was being loaded, and thereby
hurt himself as complained of. The hole into which he stepped and
caused his fall, was approximately two and one-half feet long,
two feet wide and one and one-half feet deep. This hole was
filled, or nearly so, with fine dust or soot, from the gumbo, which
obscured the hole, and said hole was not seen by plaintiff, nor was
its existence known to him. Plaintiff was inexperienced in the work,
having only been employed at this work five days, a Sunday inter-
vening. Defendant had a track crew out there who worked on and
moved the track and leveled up the ground when necessary. The
evidence fails to disclose how the hole came to be there, nor is the
evidence sufficient as to circumstances to warrant a conjecture as to
how it was produced."

It is not to be understood from this statement that the evidence
showed that the track on which stood the car which was being loaded
by plaintiff had ever been moved, or that the track crew had ever
worked over this ground after first laying the track, or that the
condition had ever arisen in which it would have been their duty
to go over it. These things are all left to conjecture.

We must hold that the evidence is legally insufficient to give rise
to any just inference of negligence on the part of the defendant. The
fact upon which plaintiff must found a right of recovery is the
existence of a hole concealed by the soft matter with which it was
apparently filled; for we can not agree that such a hole, unconcealed,
at a place like this, would be any more dangerous or any more
evidence of negligence than a like hole would be if located by a
wagon into which a servant is shovelling dirt or other matter. The
risk from such a condition would be so slight and so obvious that
the servant might well be expected to guard himself against it, and
this would require no more experience than is possessed by the
average adult. The place here in question is not like a depot plat-
form, or a railroad track, or other similar place, and the same dili-
gence in keeping it is not to be expected. There might be negli-
gence in causing or permitting the existence of a hole concealed
as this one was at any place where people ought to be expected to
pass, but, to show it, the evidence must justify the inference that
some of the employes of the defendant for whose conduct it is re-
sponsible caused that condition, or knew, or, with ordinary care,
would have known of its existence and have remedied it before plain-
tiff was hurt, and that some such happening as that of plaintiff's
hurt could reasonably have been anticipated. As the Court of Civil
Appeals have said, it can not in any way be inferred how this hole

was caused. The evidence fails to supply any fact from which any one can say when, how, or by whom the condition which made the use of the premises dangerous to plaintiff was produced. The evidence equally fails to show that the condition had existed so long as to justify an inference that the defendant knew, or, by the exercise of any degree of diligence that could be exacted of it, ought to have known of it before plaintiff was hurt. If we undertake to determine the responsibility of the defendant for the acts or omissions of any of its servants, or of any class of its servants, we are at once confronted with the inquiry, what servant, or class of servants, caused or negligently permitted this condition? No hypothesis on which liability could be founded is supported by evidence unless it is true that the mere existence of the hole in the condition described by the witnesses is of itself evidence of negligence. This could only be said if it were true that a hole so situated could not probably have existed without knowledge on part of some employe of defendant for whose negligence it is responsible, supposing that employe had exercised proper diligence; and it seems obvious that this is not true. The very gist of plaintiff's complaint is that the hole was concealed. It is not shown that any one ever saw it before the accident. It may have existed before the bed was laid, or have been caused in the burning, or have been excavated in the removal of the gumbo, or afterwards, and may have become filled as described by the witnesses at any stage of the work. It does not even appear whether or not the hole was in the ground before covered by the gumbo beds. The Court of Civil Appeals says that the defendant ought not to have put an inexperienced servant to work at such a dangerous place, but this assumes the very fact to be proved, which is, that the defendant is chargeable with knowledge of the condition that made the place dangerous. Besides, we can not see that inexperience of the plaintiff has anything to do with the question. The concealed hole was as dangerous to an experienced as to an inexperienced servant and either would have had sufficient knowledge to avoid such a risk if known to him.

It is further said that the track crew should have remedied the condition, but it is not shown that they had been over the ground after first laying the track, or that the circumstances had ever existed in which, in the proper discharge of their duties, they should have gone over it, or that had they done so the hole would have been discoverable by them. It does not appear that the hole was in existence and discernible at any time when they had worked or should have worked about this place.

This incompleteness of the evidence renders it impracticable to discuss several of the questions of law raised by the parties with any certainty that they are the real questions in the case. For instance, the Court of Civil Appeals held that those who worked in filling other cars with gumbo at other times than those at which plaintiff was hurt were not his fellow servant, and to this we agree. They were not working at the same time and place nor on the same piece of work. But how is it possible to say that any act of those servants produced the condition in question, or, if so, that

such act was negligent, when we can not even conjecture how the hole was caused.

The Court of Civil Appeals further says: "That, the place where the work of shoveling ballast was being done was constantly changing in the progress of the work does not affect the question at issue. It is true that the shoveling of the gumbo from the ground would have a tendency to leave the surface of the ground uneven, but not to the extent that it was so rendered by the hole into which the plaintiff slipped and caused him to fall.

"There is no evidence showing any other hole in like dimensions on the ground, or one that approximated its extent similarly situated, therefore such changing conditions has no application to this proposition."

There was evidence of a statement of the plaintiff that he was hurt because he stood in an unusually low place and had to throw higher and there was evidence that the bed of the pit was made by the use of scrapers, not as level as a floor, but as level as the scrapers would leave it. It is evident that in shoveling the gumbo from such a place inequalities in the ground might be produced and the mere doing of such work might produce transitory conditions the mere allowance of which would not constitute negligence on the part of the employer. The particular spots where shoveling was to be done were not permanent places kept by the master wherein the servant was to do his work, but were temporarily used and constantly changing. What the condition really was that caused plaintiff's injury was a question for the jury under proper instructions.

There is a qualification, applicable to such situations, of the general principle as to the master's duty in keeping the places where his servants are to do their work. (Labatt, Master and Servant, sec. 588; 26 Cyc., 1324.) Whether or not this should be given in a charge to the jury will of course depend on the facts developed at another trial, and whether or not those facts are sufficient to authorize the submission of the cause to a jury. As the evidence now stands, it furnishes no legal basis for a recovery by plaintiff.

Because of the insufficiency of the evidence the judgment must be reversed; but as the facts may be more fully developed at another trial, the cause will be remanded.

*Reversed and remanded.*