## ORTIZ v. EL PASO ELECTRIC CO.

### No. 3800.

Court of Civil Appeals of Texas. El Paso.

March 2, 1939.

W. Joe Bryan and J. M. Deaver, both of El Paso, for appellant.

Brown & Brooke, of El Paso, for appellee.

NEALON, Chief Justice.

Appellant, Carmelita T. Ortiz, sued appellee, El Paso Electric Company, for damages alleged to have been occasioned by the wrongful death of her son, Osbaldo, which she alleged was occasioned by the negligence of appellee. Appellee is a public service corporation and maintains high tension power transmission wires in El Paso County, Texas.

Sometime after midnight of January 1, 1937, an automobile driven by some unnamed persons struck one of defendant's poles, knocking it down and causing the wires strung thereon to fall in the public highway. A deputy sheriff, Bob Bailey, arrived at the scene of the accident and found the wires upon the ground. He notified the sheriff's office in El Paso and returned to the scene of the accident. He remained there about twenty-five minutes and no representative of defendant having arrived to take care of the situation, he again sought a telephone and reminded those in the sheriff's office of what had happened. He was told that the Company had been notified and someone was on the way to fix the wires.

While Bailey was making the second telephone call decedent and some companions who were returning from a dance drove along the road and the wires became "tangled up" with their automobile. Telles, one of decedent's companions, took the wires from the wheel and placed them on the bumper. Aguirre, another companion, took hold of the wires and placed them on the hood. Decedent entered the car and then left it and raised the wires. He touched a charged wire and was killed.

Plaintiff below alleged that the death of her son resulted from the negligence of defendant in the following particulars: (a) in placing and maintaining its wire in close proximity to the highway where, if it became loose, broken or uninsulated or thrown to the ground, it might cause death or serious bodily injury to those using the highway; (b) in not having guard or other protection around the pole, and in not building a fence or other protection between the highway and the pole; (c) in permitting the charged wires to remain in the road after they had been thrown there; (d) in failing to have the wires properly insulated and in failing to inspect them to see that they were kept properly insulated so as to discover any "breakage" or erosion in the insulation to the end that they might shut off the current or otherwise render the wires harmless; (e) failure to install suitable appliances for detecting a break or misplacement in the poles or cross-arms; (f) in failing to inspect such appliances, if they had them, for the purpose of ascertaining if the poles were down; (g) failure to have suitable appliances that would automatically cut off the current when there was a breaking or disarrangement of the poles or cross-arms; (h) in failing to cut off the current at the place of the accident when notified of the situation; (i) in not posting a watchman to warn the public, and especially to warn plaintiff's son.

In answer to special issues the jury found: (1) that the defendant failed to use ordinary care to ascertain that its wire was dislocated before the injury to decedent; (2) that such failure was a proximate cause of the death of plaintiff's son; (3) that defendant was not negligent in failing to remove the wire before the injury to decedent; (5) that there was electric current in the wire with which decedent came in contact; (6 and 7) defendant was negli-

gent in failing to cut the power from the wire before the death of Ortiz, and that such negligence was the proximate cause of the boy's death. In answer to a requested special issue the jury found that the defendant was not informed that its wires were down a sufficient time before the death of Ortiz to enable it by the exercise of ordinary diligence to remove the wires from the highway prior to decedent's contact with them. In answer to another requested special issue the jury found that the decedent did not receive warning not to touch the wires. The court sustained a motion to render judgment in favor of defendant non obstante veredicto, and judgment was so entered. From this judgment plaintiff appeals.

### Opinion.

Our attention has been called to no evidence sufficient to sustain the findings that the death of plaintiff's son was occasioned by either of the alleged negligent omissions indicated in the verdict. It will be observed that the jury made express findings that the defendant was not negligent in failing to remove the wire from its position upon the highway before decedent was injured and that defendant was not informed that its wires were down in sufficient time to enable it by the exercise of ordinary care to remove them prior to the injury. A recovery could be sustained, if at all, only upon the findings that the defendant failed to use ordinary care to ascertain that its wire was dislocated and that such failure was a proximate cause of the death of plaintiff's son; or that it was negligent in failing to cut the power from the wire before the death of Ortiz, and that such negligence was a proximate cause of the latter's death. Our attention is called to no evidence that sustains either of these findings. The duty of a power company in a somewhat similar situation, as defined by our Supreme Court in Texas-Louisiana Power Company v. Webster, 127 Tex. 126, 91 S.W.2d 302, is to exercise ordinary care to correct the dangerous condition within a reasonable time after it discovers, or in the exercise of ordinary care ought to discover, it. Here it was not made to appear by any competent evidence just when the Company was notified of the dislocation of its wires. It is possible that it may not have received notice until after the death of Osbaldo Ortiz. It is uncertain how long before that time the pole was broken and the wires thrown to the earth. It is not shown that they were there sufficiently long to charge the Company with notice. The wires having been strung in a safe position originally, ordinary care did not require constant patrolling of the area during each night. It did not appear that the wires were severed or grounded so as to disturb the flow of current and thus warn those in charge of defendant's operations that something was wrong. Nor did it appear that weather conditions were such as to call for unusual watchfulness. The collision of the automobile with the pole could not have been foreseen. There is, therefore, no evidence that defendant failed in its duty to discover the danger or in its duty to correct it after discovery. In fact appellant briefs her case upon the theory that the rule of res ipsa loquitur is applicable, and that when it was shown that death resulted from contact with one of the wires of defendant and defendant offered no evidence, the question of negligence was for the determination of the jury upon the theory that such accidents do not occur suddenly or unexpectedly in the ordinary course of things.

The rule of res ipsa loquitur is not applicable. Plaintiff relied upon specific acts of negligence. There was no disjunctive allegation of negligence generally. There was nothing to indicate that plaintiff intended to assert any other character of negligence than that specifically alleged. Wichita Valley R. Co. v. Helms, Tex.Civ. App., 261 S.W. 225. That the rule of res ipsa loquitur does not apply in cases where a plaintiff relies upon specific averments is recognized in Simmons v. Terrell Electric Light Co., Tex.Com.App., 12 S.W.2d 1011, upon which appellant relies very strongly upon this appeal. See, also, Missouri, K. & T. Ry. Co. v. Jones, 103 Tex. 187, 125 S.W. 309; Lone Star Brewing Co. v. Willie, 52 Tex.Civ.App. 550, 114 S.W. 186; Cecil & Co. v. Stamford Gas & Electric Co., Tex.Civ.App., 242 S.W. 536, 538; Gulf, C. & S. F. Ry. Co. v. Davis, Tex. Civ.App., 161 S.W. 932; Johnson v. Texas & P. Ry. Co., Tex.Civ.App., 117 S.W.2d 864.

In view of the pleadings and evidence, we think the court did not err in rendering judgment for defendant.

Judgment of the District Court is affirmed.